UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>RASHIM JOHNSON,<br><br>   Defendant. | Case No. 25-MJ-160 |

**GOVERNMENT'S MEMORANDUM IN SUPPORT OF PRETRIAL DETENTION**

The United States respectfully submits this memorandum in support of its oral motion for detention pending trial under 18 U.S.C. § 3142(f)(1)(E) (Felony Involving Possession or Use of a Firearm) and under 18. U.S.C. § 3142(d)(1)(A)(iii) (On Probation or Parole) as the Defendant, Rashim Johnson, is charged with violating 18 U.S.C. § 922(g)(1) (Unlawful Possession of a Firearm). The Defendant stands before this Court charged with illegally possessing a firearm loaded with one round in the chamber and a fully loaded 31-round extended magazine. Even more concerningly, the Defendant attempted to discard the firearm while being pursued by police, conduct that is illegal under D.C. Code § 22-4503.04(a). The Defendant engaged in this conduct despite being released on bond in multiple felony cases in Wake County, North Carolina and being on supervised release for two serious felonies in Prince George's County, Maryland. The most recent of the Defendant's convictions involved possession of a firearm while engaging in drug distribution, and the earlier involved a group assault in which one of the Defendant's accomplices pulled a firearm. Due to the Defendant's troubling history, a rebuttable presumption exists that no condition or combination of conditions will reasonably assure the safety of the community. A review of the 3142(g) factors makes clear that the defense cannot overcome these presumptions.

1

**BACKGROUND**

On August 22, 2025, the United States filed a complaint charging the Defendant with Unlawful Possession of a Firearm, in violation of 18 U.S.C. § 922(g)(1). On August 26, 2025, an initial appearance was held before the Honorable Magistrate Judge Harvey. After the United States made a motion for pretrial detention, the Court set the detention hearing for August 29, 2025.

*The Instant Offense*

On Sunday, August 10, 2025, at approximately 0013 hours, Metro Transit Police Department ("MTPD") units assigned to the United States Park Police ("USPP") Presidential Executive Order Task Force were patrolling in an unmarked patrol cruiser near the 4800 Block of Sherrif Road NE, Washington DC 20019.

Officers observed 10 to 15 individuals loitering in the middle of the street. Officers stopped and exited their vehicles while wearing outer tactical vests bearing Metro Transit Police Department identification. An individual, later identified as Rashim Johnson (thereinafter "the Defendant") by his Maryland Driver's License number, began to flee in the opposite direction of officers.

Metro Transit Police Sergeant Kenneth Bryant observed the Defendant flee on foot from the area westbound onto Kane Place NE along the north side of the street. As the Defendant was running, Sergeant Bryant observed the Defendant take a black object from his waistband and toss it over a chain-link fence bordering the property of 1010 48th Street NE. There were no persons on the property when the Defendant threw the object. Sergeant Bryant immediately voiced to other officers that the Defendant had thrown a gun and continued his pursuit of the Defendant, who kept fleeing.



*Figure 1 - Google Maps image of 1010 48th Street NE, with the red circle showing the area where the firearm was subsequently recovered*

The Defendant continued running across Kane Place NE. Sgt. Bryant drew his department-issued firearm and ordered the Defendant to the ground. The Defendant complied with this order and officers detained him in front of 4703 Kane Place NE. Only ten second elapsed between the Sergeant Bryant's voicing that the Defendant threw a gun and when the Defendant stopped running.

Immediately after the Defendant was stopped, Sergeant Bryant returned to the property where he observed the Defendant throw the gun. Sergeant Bryant entered the property and found a nine-millimeter Glock 19 handgun with an obliterated serial number. There was nothing else in that area consistent with the object that Sgt. Bryant saw leaving the Defendant hand. Only 50 second passed between when Sergeant Bryant yelled to other officers that the Defendant had thrown a gun and his recovery of the firearm.

3



*Figure 2 - Overhead map showing the locations where the firearm was recovered (red circle) and where the Defendant was detained (yellow circle)*

The weapon was equipped with an extended magazine loaded with 31 rounds and one round in the chamber. The firearm was also equipped with a flashlight below the barrel. Notably, the firearm did not appear to be rusted and was resting on the top of the grass with no leaves covering it. Additionally, the serial number was obliterated.

 

*Figure 3 - Photograph taken by Sergeant Bryant at the location where the firearm was found (left) and a subsequent photograph showing the firearm, the round in the chamber, and a fully loaded 31-round magazine (right).*

A police records check determined that the Defendant did not have a license to carry a pistol in the District of Columbia and that the Defendant did not have the pistol registered in the District of Columbia as required by law.

The Defendant was placed in handcuffs without further incident. Search incident to arrest revealed the Defendant was in possession of methamphetamine located in his right pants pocket. (53.5 pills) At approximately 0320 hours, MTPD Crime Scene Search ("CSS") Officer D. Chase conducted a field test on the recovered pills. The test yielded a presumptive positive result indicating the presence of methamphetamine.

**Defendant's Criminal History & Performance Under Supervision**

The Defendant has a history of three prior convictions, each involving the possession or use of firearms, and two of which involved assaultive behavior against other members of the

community. Relating to those convictions, the Defendant has a history of violating both pretrial and post-conviction supervision. At the time of the arrest in this case, he had been on post-release supervision for his most recent conviction for just six months and was released on bond for felony offenses in Wake County, North Carolina.

1. CT191128X (Felon-in-Possession & PWID)

Most recently, according to Maryland Judiciary Case Search, the Defendant was sentenced on January 28, 2020, of Possession of a Firearm by a Person with a Prior Felony Conviction and Possession with Intent to Distribute a Controlled Substance.

According to the Statement of Probable Cause[1], on October 3, 2019, an officer stopped the Defendant for operating a motor vehicle while not wearing a seat belt. The officer smelled marijuana emanating from the vehicle, and a check of the Defendant's license showed that it was suspended. The Defendant also stated that he did not have insurance for the vehicle. Officers conducted a search of the vehicle, which was registered to the Defendant, and found a loaded Beretta nine-millimeter handgun bearing serial number A012736X underneath the driver's seat. Officers also found a sandwich baggie of marijuana underneath the seat, two additional jars containing marijuana, a digital scale, and a box of unused baggies. In total, officers found 79 grams of marijuana at that time. The firearm was loaded with 15 rounds with one of those rounds in the chamber. The firearm had been previously reported stolen about 45 days earlier from a UPS shipment center.

After the Defendant was arrested, he made a phone call through the inmate phone system

---

[1] See Exhibit A

in which he said that the officers "did not find the other shit, which would have made it worse."[2] Officers executed a search warrant on the car and found five ounces of suspected phencyclidine packaged in two large vials and 18 miniature vials.

The Defendant then made another call through the inmate phone system telling the callee to "go in my room and throw that mothafuckin' [sic] box away." Based on this statement, officers obtained a residential search warrant and found a black Beretta Gun Box with the same serial number (Serial Number A012736X) as the handgun recovered from Mr. The Defendant during the October 3rd, 2019, the traffic stop. The gun box contained a beretta magazine containing nine rounds of ammunition Detectives also recovered eight glass vials with trace amounts of phencyclidine.

According to Maryland court records, the Defendant initially appeared for the charges in this case on October 4, 2019, and a bail review was held on October 7, 2019, at which time the Defendant was held pending trial. He remained committed to custody until the conclusion of the case. On January 28, 2020, the Defendant was sentenced to 15 years, execution of sentence suspended as to all but five (5) years for Possession of a Firearm by a Person with a Prior Felony Conviction, and 20 years, execution of sentence suspended as to all but five (5) years for Possession with Intent to Distribute a Controlled Substance, with the sentences to run concurrently. According to the Pretrial Services Report, the Defendant was released from custody and commenced his supervised probation for this matter commenced on February 4, 2025, just six months ago.

---

[2] See Exhibit B, a case detective's case summary of the subsequent investigation after the October 3, 2019, arrest.

2. <u>CT190681B (Assault in the Second Degree)</u>

According to the Maryland Judiciary Case Search, the Defendant was convicted on February 3, 2020, of Assault in the Second Degree for an offense committed on March 15, 2019. The Defendant received a sentence of ten years of incarceration, execution of sentence suspended as to all but five years, to be followed by five years of supervised probation.

According to the Statement of Probable Cause filed in this matter[3], on March 15, 2019, the Defendant and two accomplices assaulted three victims. The victims reported that the defendants engaged in verbal altercation with the victims, which escalated into a physical confrontation. The defendants began punching the victims, and towards the end of the assault, one of the Defendant's accomplices pulled a handgun and brandished it at the victims to threaten them. The Defendant and his accomplices fled in a silver Volvo but were stopped by officers shortly thereafter. The accomplice who brandished the firearm at the victim was found with a black .40 caliber Glock 22 handgun that had been previously reported stolen. A search of the Defendant revealed that he was carrying 44 Percocet pills, 4 Hydrocodone-Acetaminophen pills, and two- and one-half grams of suspected crack cocaine.

The Defendant committed this offense while on post-release supervision for an Attempted Armed Robbery conviction in Docket No. CT121391X (described below). Additionally, Maryland court records indicate the Defendant was released after his initial appearance, but less than seven months after release, while pending trial in this case, the Defendant committed the offenses described above in CT191128X.

---

[3] Exhibit C.

3. <u>CT121391X (Attempted Armed Robbery)</u>

According to Maryland Judiciary Case Search, on February 15, 2013, the Defendant pled guilty to three offenses: Attempted Armed Robbery, Robbery with a Deadly Weapon, and Use of a Handgun During the Commission of a Crime. The Defendant was sentenced on March 29, 2013. As to the Attempted Armed Robbery, the Defendant received a sentence of seven years of incarceration. As to the Robbery with a Deadly Weapon, the Defendant was sentenced to 20 years of incarceration, execution of sentence suspended as to all but 5 years incarceration. As to Use of a Handgun During the Commission of a Crime, the Defendant was also sentenced to 20 years of incarceration, execution of sentence suspended as to all but 5 years of incarceration.

According to the Statement of Probable Cause filed at the outset of the case[4], on August 31, 2012, the Defendant and two other accomplices, all of whom were armed with handguns, ambushed and demanded their money from two victims who were waiting in line overnight at a store for the release of new line of sneakers. The victims surrendered United States currency and a phone. A police officer who was on routine patrol at the time observed the incident.

The Defendant violated the terms of his post-release with new arrests on two occasions. First, he reoffended on March 15, 2019, by committing an Assault in the Second Degree in CT190681B, described above. The defendant was sentenced on this violation of probation on February 3, 2020, the same date he received the sentence for his conviction CT190681B. He was eventually released from his term of incarceration for the violation of probation and continued under supervision. After continuing under supervision, he violated his conditions a second time when he was re-arrested on October 4, 2019, in Docket Number CT191128X, described above. As a result, a second violation of probation petition was filed by the Maryland Department of

---

[4] Exhibit D.

Probation in this matter.

    4. <u>North Carolina Offenses (pending)</u>

Just two months after being released in his most recent Maryland conviction, the Defendant was rearrested for new charges in Wake County, North Carolina. First, on or about April 16, 2025, the Defendant allegedly broke into a 2014 Honda Odyssey with intent to commit larceny (25CR285181-910). <u>Exhibit E</u>. The Defendant posted bond in that case on April 18, 2025. One week later, on April 23, 2025, the Defendant allegedly conspired with two other individuals to commit the offense of Break/Enter into a Motor Vehicle (25CR290302-910). <u>Exhibit F</u>. According to the charging document, the offense was committed against construction workers at their job site and not in or near their vehicles and may have targeted those individuals due to their legal status and reluctance to contact law enforcement.[5] The Defendant is released on bond in that matter as well.

## **ARGUMENT**

Under the Bail Reform Act, if the Court determines that "no condition or combination of conditions will reasonably assure the appearance of [a defendant] as required and the safety of any other person and the community," the Court shall order a defendant held pending trial. 18 U.S.C. § 3142(e).

The Act provides, however, that for certain persons, there is a rebuttable presumption that no conditions or combinations of conditions will assure the safety of the community. As relevant

---

[5] The Defendant is also charged in a third matter, Docket No. 25CR285159-910 with fleeing and eluding. The undersigned AUSA spoke with the Wake County District Attorney's Office and learned that this charge was intended to be filed against one of the Defendant's co-defendants but was filed against the Defendant in error.

10

to this case, the Act provides rebuttable presumptions for persons who meet these conditions:

> (A) the person has been convicted of a Federal offense that is described in subsection (f)(1) of this section, or of a State or local offense that would have been an offense described in subsection (f)(1) of this section if a circumstance giving rise to Federal jurisdiction had existed[6];
>
> (B) the offense described in subparagraph (A) was committed while the person was on release pending trial for a Federal, State, or local offense; and
>
> (C) a period of not more than five years has elapsed since the date of conviction, or the release of the person from imprisonment, for the offense described in subparagraph (A), whichever is later.

18 U.S.C. § 3142(e)(2). The rebuttable presumption applies to the Defendant considering his 2019 Prince George's County, Maryland conviction in Case Number CT191128X for Possession of a Firearm by a Person with a Prior Felony Conviction and Possession with Intent to Distribute a Controlled Substance. First, the Defendant's conviction meets the criteria of a qualifying offense under § 18 U.S.C. 3142(f)(1)(c) - an offense for which, had there been a circumstance for a federal conviction, a maximum term of imprisonment of ten years or more would have been prescribed in the Controlled Substances Act. Second, that offense was committed while on release pending trial in Prince George's County Circuit Court Case Number CT190681B. Third, a period of less than five years has elapsed since the Defendant was from his sentence for this conviction in 2019 Docket Number CT191128X.

In determining whether any condition or combinations of conditions will assure the safety of the community, in light of any applicable presumptions, the Court weighs four factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) his history and characteristics; and (4) the nature and seriousness of the danger to

---

[6] The Defendant's convictions in CT191128X could have been charged as federal offenses under 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 924(c). Specifically, the Defendant was charged with have possessed five ounces of phencyclidine (PCP) while armed.

any person or the community that would be posed by his release. *See* 18 U.S.C. § 3142(g). Due to the Defendant's prior history under 18 U.S.C. 3142(e)(2), the Court must presume that no condition or combination of conditions will reasonably assure the safety of the community. A review of the 3142(g) factors makes clear that the defense cannot overcome these presumptions.

### I. The Nature and Circumstances of this Offense Merits Detention.

The first factor to be considered, the nature and circumstances of the offense charged, weighs in favor of detention. The Defendant is charged with a serious offense carrying a significant penalty. For violating 18 U.S.C. § 922(g), the Defendant faces a maximum sentence of up to 15 years imprisonment pursuant to 18 U.S.C. § 924(a)(8). Here, the evidence is not just that the Defendant is accused of possessing a firearm. The allegations are that the Defendant fled from a law enforcement officer, and during flight, pulled out a firearm and attempted to discard it by throwing it into the backyard of a residential property. This conduct constitutes a separate criminal offense under District of Columbia Code § 22-4503.04. Then there are the characteristics of the firearm that the Defendant discarded – it was loaded with not only one round in the chamber ready to fire, but it was equipped with an unusually large extended magazine fully loaded with 31 rounds of ammunition, and the serial number was obliterated. And once the Defendant was arrested, he was found with a significant number of pills that tested positive for methamphetamines.

As a threshold matter, the Court has repeatedly held that possession of a firearm, when loaded or carried in a concealed manner as in this case, poses a risk of danger to the community. *See, e.g., United States v. Cole*, 459 F. Supp. 3d 116, 120 (D.D.C. 2020) (noting that a loaded firearm "has the great potential to escalate into violence," particularly when Defendant's prior convictions indicate a predilection for violence); *United States v. Riggins*, 456 F. Supp. 3d 138,

144 (D.D.C. 2020); *United States v. Gassaway*, No. 21-cr-550 (RCL), 2021 U.S. Dist. LEXIS 175978 at *9-10 (D.D.C. Sept. 16, 2021) (collecting cases in this district holding that unlawful firearm possession is dangerous to the public); *United States v. Howard*, No. 20-mj-181 (BAH), 2020 U.S. Dist. LEXIS 172978, 2020 WL 5642288, at *3 (D.D.C. Sept. 21, 2020) ("Illegally possessing a concealed firearm in public where other people are congregated, as alleged, poses an inherent risk of danger to the community."); *see also United State v. Kent*, 496 F. Supp. 3d 500, 502 (D.D.C. 2020) (holding that a Defendant should be detained pretrial in part because "the firearm recovered from the Defendant's person had a round already chambered, making the circumstances even more troubling"), *aff'd* (D.D.C. Nov. 5, 2020). The firearm recovered from the Defendant had many of these troubling characteristics, and more broadly, the firearm was loaded and ready to fire when it was recovered. Simply stated, unlawful gun possession is so problematic, especially by someone with the Defendant's criminal history, because of the number of violent gun crimes committed in the District.

**II. The Weight of the Evidence Against the Defendant is Strong.**

The second factor to be considered, the weight of the evidence, also weighs in favor of detention. Here, the Government's case against the Defendant is strong. When officers approached the group of people loitering in the street, multiple people from the group fled in different directions. With these facts alone, officers may have had reasonable suspicion to stop the defendant. *See Illinois v. Wardlow*, 528 U.S. 119 (2000); *Hargraves v. District of Columbia*, 134 F.Supp.3d 68, 82 (D.D.C. 2015). As Sergeant Bryant ran after the Defendant, he saw the Defendant throw the gun, a criminal offense under D.C. law. This conduct gave Sergeant Bryant reasonable suspicion, if not probable cause, to arrest the Defendant. After the Defendant was detained,

Sergeant Bryant returned to the area where he saw the Defendant discard the firearm and found it laying in an empty residential backyard.[7]

"If the evidence against a Defendant is overwhelming, credible, helpful, and important to the government's case in chief, that may increase the risk that Defendant will flee to avoid future court proceedings and may indicate that the Defendant is a present danger to himself or the community if the government's allegations later prove to be true." *Blackson*, 2023 U.S. Dist. LEXIS 18988, at *29-30. And so it is in this case, the weight and strength of the evidence increases the prospect that the Defendant will present a danger to the community if released.

### III. The Defendant's History and Characteristics Merit Detention.

The third factor, the Defendant's history and characteristics weigh heavily in favor of detention. As discussed above, the Defendant was only released from his prison term for convictions of Possession of a Firearm by a Prohibited Person and Possession with Intent to Distribute a Controlled Substance six months ago and is currently under supervised probation. Additionally, the Defendant has prior convictions for Assault in the Second Degree and Attempted Armed Robbery. The statements of facts from each of these offenses show the Defendant's

---

[7] The weight of the evidence should be considered equally with the other § 3142 factors. In *United States v. Blackson*, following a thorough review of the text of § 3142 and decisions analyzing this factor, Judge Howell found that "the weight of the evidence should not automatically be weighed less than the remaining statutory pretrial detention factors." 2023 U.S. Dist. LEXIS 18988, at *29-30. Instead, "the weight of the evidence against [a] Defendant [should] be weighed as all factors are—in accordance with the specific facts of this case—to determine whether pretrial detention is appropriate." *Id.* In an unpublished opinion, the D.C. Circuit affirmed Judge Howell's decision. *United States v. Blackson*, No. 23-3020, 2023 WL 2663034 (D.C. Cir. Mar. 28, 2023). Moreover, the Second Circuit reached the same decision after a thorough and careful analysis of the issue. *United States v. Zhe Zhang*, 55 F.4th 141, 149-150 (2d Cir. 2022). This Court should follow *Blackson* and *Zhang;* this factor should be given no less weight than any other factor.

willingness to not only possess firearms, but to either personally use firearms in the community or associate himself with other individuals who are willing to arm themselves for the purpose of committed crimes.

Just as troubling, the Defendant committed the Assault in the Second Degree offense while he was on post-release supervision for his conviction for Attempted Armed Robbery. Then, just six months after being released pending trial for the Assault in the Second Degree charge, he was re-arrested in October 2019 for once again possessing a firearm in the community. This re-arrest not only violated his pretrial release conditions for his pending Assault charge, it also violated his post-release supervision for his 2012 Attempted Armed Robbery Conviction.

Finally, turning to the conduct in this case, the Government notes that it was committed while the Defendant was on post-release supervision for his 2019 firearm and drug-related conviction and while he was released on bond in his North Carolina. While the Pretrial Services Report indicates that the Defendant "last reported on July 17, 2025, without any issues," the Government would submit that the Defendant's temporary compliance does not outweigh the Defendant's clear history of re-offending while under supervision.

The Government would note that this Court has routinely held Defendants who have been charged with firearms possession while on probation or release. *United States v. Bishop*, 25-mj-124 (Defendant who fled from police, had been on supervised release for CWPL for approximately 7 months and had history of prior gun arrests)*; United States v. Isaiah Pushia-Keith*, 25-cr-196 (Defendant possessed ghost gun while on supervised probation for a domestic violence felony conviction and had two additional domestic violence convictions); *United States v. Holland*, 25-mj-129 (Defendant had prior CPWL conviction and history of pretrial non-compliance and failures to appear); *United States v. Linnell Shelton*, 25-cr-874 (Defendant found in possession of firearm

15

while overdosing and on supervised release for a prior voluntary manslaughter conviction); *United States v. Kelon Dukes*, 25-cr-00068, (Defendant on supervised probation for a CPWL conviction); *United States v. Kemani Rhodes*, 25-cr-00156 (Defendant possessed a dis-assembled assault rifle while on probation for another firearms offense and had an arrest warrant issued for assault and home invasion charges in Maryland); *United States v. Jevaun Hodge*, 25-mj-00063 (Defendant on supervised release at time of arrest and had history of non-compliance). *United States v. Stephan Freeman,* 25-cr-127 (Defendant had a gun in a backpack held due to non-compliance with court orders, including a civil protection order); *United States v. Bruce Hart*, 24-cr-528 (Defendant conceded detention when he was arrested while on probation for two Virginia convictions); *United States v. Brandon Smith* 24-cr-574 (Defendant who had a gun in a satchel by his feet had just completed supervised release for Robbery and PFCOV just twenty-six days before new offense). So it should be in this case. The Defendant's history is consistent with, and in many respects, worse than the history of other defendants who have been held by this Court. The Defendant has shown he is willing to disregard the law, even while on probation for serious offenses or on pretrial release for serious offenses. Consequently, this factor weighs in favor of detention.

### D. Danger to the Community

The fourth and final factor, danger to any person or the community posed by Defendant's release, overwhelmingly weighs in favor of detention.

"At the outset, it cannot be gainsaid that unlawful possession of a firearm that is unregistered and fully loaded, with an extended capacity magazine, carried in a position of easy, quick access poses a significant danger to other persons and the community." *Blackson*, 2023 U.S. Dist. LEXIS 18988, at *33. Defendant's possession of this firearm alone presented a significant

16

danger to our community. *See United States v. Washington*, 907 F. Supp. 476, 486 (D.D.C. 1995) ("[P]ossession by a felon of a fully loaded semi-automatic pistol suggests that the defendant presents an extreme safety risk to the public."). Furthermore, Defendant's unwillingness to abide by his conditions of supervision, as well as his history of arrests for the same exact same conduct, should show the Court that he poses a danger to those around him if released.

The D.C. Circuit has noted that "'[w]hen the Government proves by clear and convincing evidence that an arrestee presents an identified and articulable threat to an individual or the community,'" pretrial detention is available to "'disable the arrestee from executing that threat.'" *Munchel*, 991 F.3d at 1280 (quoting *United States v. Salerno*, 481 U.S. 739, 755 (1987)). This requires the Court to make a "forward looking determination" about Defendant's risk of danger to the community, keeping in mind that detention may be justified even if the Court does not explicitly find that Defendant is a risk of committing acts of violence. *United States v. Hale-Cusanelli*, 3 F.4th 449, 456 (D.C. Cir. 2021) (citing *Munchel*, 991 F.3d at 1283).

Defendant poses an obvious and articulable prospective threat to the community, as evidenced by his recidivism while on release in prior cases. Defendant's recent criminal contacts show that his criminal activity is unabated, and it highlights his flagrant skirting of court admonishments to avoid criminal behavior.

## **CONCLUSION**

For all the foregoing reasons, the Government respectfully requests that the Court detain the Defendant pending trial on these charges.

          Respectfully submitted,

          JEANINE FERRIS PIRRO
          UNITED STATES ATTORNEY

By:   s/ Travis Wolf
      TRAVIS WOLF
      Assistant United States Attorney
      NY Bar No: 5483243
      United States Attorney's Office
      601 D Street, NW
      Washington, D.C. 20530
      Telephone: 202-803-1670
      Travis.Wolf@usdoj.gov